Jason Crews
1515 N Gilbert Rd Ste 107-204
Gilbert, AZ 85234
602-295-1875
Jason.crews@gmail.com

*In propria persona.*

```
                    FILED      ___ LODGED
                ___ RECEIVED  ___ COPY

                    FEB 0 5 2025

                CLERK U S DISTRICT COURT
                  DISTRICT OF ARIZONA
                BY_____ DEPUTY
```

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| Jason Crews,<br><br>    Plaintiff,<br><br>vs.<br><br>Symmetry Financial Group, LLC,<br><br>And<br><br>Brandon Ellison<br><br>    Defendants. | Case No.: **CV25-00376-PHX-CDB**<br><br>Complaint for Violations of:<br>1.  NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br>2.  WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br><br>DEMAND FOR JURY TRIAL |

///
COMPLAINT- 1

# COMPLAINT

## Preliminary Statement

1. "When it comes to robocalls, you can only call those who, like Blondie, have said, "Call me. Call me on the line." If you call people who haven't opted in , then you face liability under the Telephone Communications Protection Act." *Perrong v. Bradford*, 2024 WL 2133801, at *1 (E.D. Pa. May 13, 2024).

2. Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3. The Defendants in this action Symmetry Financial Group, LLC and Brandon Ellison orchestrated placing at three illegal telemarketing calls using an Automated Telephone Dialing System ("ATDS") to a number assigned to a cellular service which was included on the national Do-Not-Call List.

4. Plaintiff never consented to receive such messages.

## Parties

5. Plaintiff Jason Crews ("Crews") is and was a resident of Maricopa County, Arizona at all relevant times, and a resident of this District.

6. Defendant Symmetry Financial Group, LLC("Symmetry"), incorporated in Deleware, doing business as Symmetry Financial, and is in the business of selling insurance products throughout the United States to consumers over the telephone.

7. Defendant Brandon Ellison ("Ellison"), a resident of Buncombe County, North Carolina, was at all times relevant the owner and CEO of Symmetry who directed and authorized the illegal calls complained of herein.

## Jurisdiction & Venue

8. The Court has federal question subject matter jurisdiction over these TCPA claims: *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

COMPLAINT- 2

9. The Court has specific personal jurisdiction over the Defendants because the defendants caused the events complained herein to occur in Arizona out of which the TCPA claims arose, and the defendants had minimum contacts with Arizona to justify assertion by an Arizona court of personal jurisdiction, *Meyers v. Hamilton Corp.*, 693 P.2d 904 (Ariz. 1985). Defendants intentionally called or caused Plaintiff's number to be called by dialing an Arizona area code at least three times within a twelve month period to advertise their services despite Plaintiffs number being listed on the national do not call registry in violation of the TCPA. Additionally Symmetry and their representatives are licensed to sell insurance by the State of Arizona.

10. This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves to the State of Arizona and to this District, and there is a sufficient relationship between Defendants' purposeful contacts with Arizona and the litigation. Defendants purposefully sent calls into Arizona despite having no business relationship with Plaintiff.

   a. Defendants target Arizona when marketing debt relief and regularly conduct business in this District, including telephone solicitation.

   b. Defendants purposefully sent phone calls to Plaintiff's Phoenix area phone number with area code 602 to generate leads for Defendant DFA.

   c. Defendants Symmetry and Ellison directed the calls to be sent into Arizona and purposefully directed that Arizona residents be targeted with the solicitation phone calls.

   d. The purposeful calls to Arizona injured Plaintiff in Arizona, creating a causal link among Defendants, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction. See *Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

### Venue

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and

COMPLAINT- 3

services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District and because the Plaitniff resides in the District of Arizona when he received a substantial, if not every single phone call, from Defendants Symmetry and Ellison which is the subject matter of this lawsuit.

12. Venue is proper for this matter because the calls at issue were sent by or on behalf of the above-named Defendants to Plaintiff, an Arizona resident.

### The Telephone Consumer Protection Act

13. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers en masse. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. See S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS') or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B). 15. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).1

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

COMPLAINT- 4

18. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

21. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

COMPLAINT- 5

23. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

24. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. E.g., *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### Factual Allegations

25. Plaintiff had no prior business relationship with Defendants.

26. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

27. Defendant Ellison is a "person" as defined by 47 U.S.C. § 153(39).

28. The phone number (602) 295-XXXX ("Cell Number") belongs to Plaintiff.

29. The Cell Number has been on the Do-Not-Call registry since November 7, 2006.

30. Despite this registration, Defendants placed the calls summarized in the following table with an Automated Telephone Dialing Systems ("ATDS").

| Date | Time | Caller ID |
|---|---|---|
| 4/18/2024 | 5:17 PM | (602)459-6468 |

31. Plaintiff only seeks damages for the call placed April 18, 2024.

32. The Cell Number is assigned to a cellular phone used exclusively for personal residential purposes.

33. The Cell Number is not associated with a business.

Call to Plaintiff

34. On or about April 18, 2024, at 5:17 pm, Plaintiff received a call presenting caller ID (602)459-6468.

COMPLAINT- 6

35. Plaintiff was greeted by an individual who identified themselves as Yuri from "Symmetry".

36. Kevin pitched life insurance products offered by Symmetry, and offered to sell Plaintiff a life insurance policy.

37. On April 18, 2024, Plaintiff emailed Symmetry's Chief Legal Officer, Matthew Goforth ("Goforth"), via email to investigate the call and discuss a resolution.

38. On May 8, 2024, Goforth responded "Symmetry does not have any affiliation with any insurance agent that has ever used that phone number for outgoing calls, and Symmetry does not have any employee named Yuri or any affiliation with any insurance agent named Yuri." Exhibit 1.

39. In an effort to ascertain the identity of Yuri's employer, Plaintiff sent Yuri a text message requesting that he identify his employer.

40. Yuri declined stating he had been instructed to to speak to Plaintiff because he had sued his employer.

41. The only individual Plaintiff ever discussed the call with was Mr. Goforth.

42. Plaintiff sent Yuri a text message from another number and asked what company he worked for.

43. Yuri confirmed Symmetry. Exhibit 2.

44. The Agreement required Symmetry to place Plaintiff's telephone numbers on its internal Do Not Call list and the Do Not Call lists of its affiliates.

45. Upon information and belief, Symmetry failed to: a. Maintain a functional internal Do Not Call list; b. Actually place Plaintiff's numbers on any such list; c. Train its employees and agents on the existence of its Do Not Call list; d. Train its employees and agents on proper maintenance of its Do Not Call list; e. Train its employees and agents on proper usage of its Do Not Call list; f. Implement any procedures to check numbers against its Do Not Call list before making calls; g. Implement any procedures to prevent its agents from calling numbers on its Do Not Call list; and h. Share its Do Not Call list with its affiliates as required by the Agreement.

COMPLAINT- 7

46. The call from Symmetry's agent "Yuri" demonstrates that either: a. Symmetry has no functional Do Not Call list; b. Symmetry failed to place Plaintiff's numbers on its Do Not Call list; or c. Symmetry failed to train its agents to check and comply with its Do Not Call list.

47. These failures represent both a breach of the Agreement and evidence of Symmetry's willful non-compliance with the TCPA's requirements regarding internal Do Not Call lists.

### Defendants' Conduct Was Knowing and Willing

48. Defendants intentionally called Plaintiff multiple times in order to advertise their services to Plaintiff.

49. Plaintiff believes and therefor avers Mr. Goforth, an officer of the Court and a member in good standing of the bar, advised Yuri of Plaintiffs complaint relating to Yuri's phone call, advised him not to communicate with Plaintiff, and then misrepresented Yuri's employment relationship with Symmetry.

50. These calls were knowingly and intentionally made after multiple direct written and verbal requests to be placed on their internal do-not-call list, and to not be called by Defendant or their representatives.

51. Plaintiff has commenced legal action in Jason Crews v. Symmetry Financial Group, LLC, Case No. 2:24-cv-00108-SMB alleging similar allegations of willfula violations of the TCPA, only to be continually harassed by Symmetry and their representatives after explicitly agreeing not to contact Plaintiff.

52. Defendants knew their actions were in violation of the TCPA and willfully continued their conduct calling Plaintiff multiple times despite the registration of his number on the National Do-Not-Call List, and direct request not to be called.

### Ellison's Personal Liability

53. Defendant Ellison personally participated in the calls at issue because Ellison personally directed the calls to be transmitted throughout the United States including

COMPLAINT- 8

numbers with Arizona area codes of which he knew were likely to belong to individuals, such as Plaintiff, who reside there.

54. Ellison is the principal officer of Defendant Symmetry.

55. Ellison closely holds Defendant Symmetry and is intimately involved in all decision making and legal activities of Defendant Symmetry.

56. Ellison made the decision to hire agents such as Yuri who are licensed in Arizona, approved of training employees such as Lopez on the use of proprietary technology, and directed his employees to use the technology with the intention of breaking state and federal laws.

57. Defendant Ellison has direct and personal involvement in and ultimate control over every aspect of Defendant Symmetry's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.

58. Defendant Ellison at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint,

59. There is precedent holding corporate officers personally liable when they participate in the alleged actions: "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985) The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp.

COMPLAINT- 9

2d 892 (W.D. Tex. 2001) Quoting *Texas v. American Blastfax*: The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA. To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is far more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

60. The Same Court held that corporate officers were also personally liable for DTPA violations; The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he

COMPLAINT- 10

performed the act as an agent for the corporation......Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

61. Defendant Ellison is the CEO of Symmetry and controls the day-to-day operations of Symmetry and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

62. Defendant Ellison is not merely a bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

63. Defendant Ellison is well aware their conduct violated the TCPA and refused to alter their behavior. Defendant Ellison is the principal director and officer of Defendant Symmetry and the only person with the power to make unlawful, fraudulent, and unethical behavior stop.

64. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

## Vicarious Liability

65. Defendant Symmetry through their authorized representative Yuri made multiple auto-dialed robocalls to Plaintiff.

66. Yuri used utilized software provided by Symmetry.

67. Yuri used proprietary information and systems provided by Defendant Symmetry.

68. Symmetry authorized Yuri to make the phone calls at issue here.

69. Symmetry was aware of the phone calls being made by Yuri and accepted referrals from Yuri pursuant to the authorization provided to Yuri by Symmetry.

70. Symmetry gave access to their proprietary systems and software to Defendant Yuri.

71. Symmetry hired an offshore telemarketer to make phone calls on their behalf. Yuri is the agent of Symmetry and the offshore telemarketer is the subagent of Symmetry.

COMPLAINT- 11

72. The offshore telemarketer made the phone calls at the direction and control of Symmetry.

73. Symmetry exercised interim control over whom and under what conditions referrals would be accepted.

74. Symmetry has been aware of the TCPA-violating phone calls made by salespersons for years and has ratified the behavior by maintaining the salespeople responsible for the violations and continuing to accept referrals despite the knowledge of the violations.

75. Ellison has made telemarketing in violation of the TCPA a regular source of referrals in multiple organizations in which he is associated.

76. A defendant may be held vicariously liable for Telephone Consumer Protection Act (TCPA) violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller. Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C.A. § 227(b)(2). *Gomez v. Campbell-Ewald Co.*, 768 F.3d 872, 11 (9th Cir. 2014).

### Ratification

77. Symmetry was delivered DNC requests by Plaintiff on December 9, 2023.

78. Symmetry was informed verbally of Plaintiff's DNC request to their employee Defendant Yuri on December 9, 2023.

79. Symmetry was fully aware of Plaintiff's desire to not be called and solicited for their services.

80. On December 12, 19, 21, four times on December 28, twice on January 2, and on January 16 Symmetry with full knowledge of Plaintiff's desire to not be called and solicited, continued to call Plaintiff to advertise their products.

81. Defendant Symmetry was consciously calling Plaintiff's with full awareness the phone calls were violating the TCPA and that Plaintiff had delivered multiple DNC requests to Defendant Freedom.

COMPLAINT- 12

82. Defendant Symmetry was consciously calling Plaintiff's with full awareness the they did not maintain an internal do not call policy as required by the TCPA and that Plaintiff had requested it.

83. Defendant Symmetry was consciously calling Plaintiff's with full awareness the they did not place Plaintiff on their internal do not call list as required by the TCPA and that Plaintiff had requested it because they did not maintain one.

84. Even when a party is not directly liable, it may nevertheless be vicariously liable "under federal common law principles of agency for TCPA violations committed by third-party telemarketers." *DISH Network*, 28 FCC Rcd. at 6584. These agency principles include "not only formal agency [or actual authority], but also . . . apparent authority and ratification." *Id.*; see also *FDS Rest., Inc. v. All Plumbing, Inc.*, 241 A. 3d 222, 238n. 24 (D. C. 2020) (noting that a different provision of the TCPA, 47 U.S.C. § 217, creates vicarious liability for the acts of an agent). The plaintiff must establish the agency relationship between the defendant and the third-party caller to establish vicarious liability. See *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1072-73 (9th Cir. 2019), as amended on denial of reh'g and reh'g en banc (May 6, 2019) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), aff'd, 577 U.S. 153 (2016), as revised (Feb. 9, 2016)).

## Breach of Contract

85. On or about January 17, 2024, Plaintiff and Symmetry entered into a written agreement ("Agreement") that created certain ongoing obligations between the parties.

86. The Agreement remains in full force and effect.

87. On April 18, 2024, at approximately 8:14 PM, Plaintiff received a telephone call from (602)459-6468 from an individual claiming to represent Symmetry Financial.

88. On April 19, 2024, Plaintiff identified this caller as "Yuri" and reported this information to Goforth.

89. On May 8, 2024, Goforth, in his capacity as Chief Legal Officer of Symmetry, responded by email stating: "We have searched our records and can confirm that the call was not made by or on behalf of Symmetry. Symmetry has never used that phone number for

COMPLAINT- 13

outgoing calls, Symmetry does not have any affiliation with any insurance agent that has ever used that phone number for outgoing calls, and Symmetry does not have any employee named Yuri or any affiliation with any insurance agent named Yuri."

90. Upon information and belief, Goforth knew these representations were false when made.

91. Text messages between Plaintiff and the caller from (602)459-6498 demonstrate the caller's connection to Symmetry, as evidenced by the following exchange: a. Plaintiff: "which company are you from?" b. Plaintiff: "Is it symmetry?" c. Caller: "Yes, how can I help out?"

92. These communications were made after the Agreement was in effect and in direct violation of its terms.

93. Upon information and belief, Goforth instructed or caused the caller to cease communications with Plaintiff in order to conceal both the breach of the Agreement and Goforth's misrepresentations about Symmetry's connection to the caller.

### The TCPA Prohibits All Automated Calls to Protected Numbers

94. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call": 47 U.S.C. § 227 (b)(1)(A)(iii).

95. Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy (as is the case with cellular phones): *Barr v. Am. Ass'n of Pol. Consultants Inc.*, 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas, concurring in part and dissenting in part).

96. According to findings by the Federal Communications Commission ("FCC"), which is the agency Congress vested with the authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or

COMPLAINT- 14

prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

97. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

98. These causes of action apply to users of any of four protected services (pager, cellular, specialized mobile radio [i.e., radio telephony locator beacon or dispatch system], or another radio common carrier service [i.e., ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged: *Lynn, Monarch Recovery Mgmt. Inc.*, 953 F. Supp. 2d 612, 623, (D. Md. 2013).

99. "Non-Emergency pre-recorded voice or autodialed calls to the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

100. U.S.C. § 227(c)(2) states, "No person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government" and defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person…": U.S.C. § 227(f)(15).

101. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used": In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

102. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered:
> [A] Consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf

COMPLAINT- 15

of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

103. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

104. 47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may … [e]xcept as provided … initiate any telephone call … using an automatic telephone dialing system or an artificial or prerecorded voice."

105. 47 C.F.R. § 64.1200(a)(1) specifically protects the following: "emergency telephone line," "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment," and/or "cellular telephone service." 47 C.F.R. § 64.1200(a)(2) further prohibits entities from "initiat[ing], or caus[ing] to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described… "

106. The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers: 47 C.F.R. § 64.1200(c)(2).

107. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator": *Id.*

108. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provide a private right of action against any entity making those calls or "on whose behalf" such calls are promoted: 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

109. 47 C.F.R. § 64.1200(d) states, "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive

COMPLAINT- 16

telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minimum standards":

> (1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand…"
> (2) "[P]ersonnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list."
> (3) "If a person or entity making a call for telemarketing purposes … receives a request … not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name … and telephone number on the do-not-call list at the time the request is made … must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."
> (4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."
> (5) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

## Claims

### Count One

110. Plaintiff incorporates the foregoing allegations as fully set forth herein.

111. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute violations of the TCPA, 47 U.S.C. § 227, by sending calls, except for emergency purposes, to Plaintiff's telephone which is assigned to a cellular telephone service using an ATDS.

112. As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

113. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or his affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending

COMPLAINT- 17

messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

114. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(b)(3)(B)

115. Defendants' violations were willful and/or knowing.

## Count Two

116. Plaintiff incorporates the foregoing allegations as fully set forth herein.

117. Defendants called Plaintiff's private residential telephone number which was registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. § 64.1200(c)(2).

118. As a result of their unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(c)(3)(F) entitling him to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop his illegal calling campaign.

119. Plaintiff is entitled to an award up to $1500 in damages for each knowing and willful violations of 47 U.S.C. § 227(c)(3)(F).

120. Defendants' violations were willful and/or knowing.

## Count Three

**Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059**

121. Plaintiff incorporates the foregoing allegations as fully set forth herein.

122. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

123. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer

COMPLAINT- 18

goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

124. Defendants failed to secure prior express written consent from Plaintiff.

125. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff without Plaintiff's prior express written consent.

126. Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff to be made utilizing an automated system for the selection or dialing of telephone numbers.

127. As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff was harmed and are each entitled to a minimum of $500.00 in damages for each violation. *Id.*

## Count Four

### Breach of Contract

128. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

129. The Agreement constitutes a valid and binding contract.

130. Symmetry materially breached its obligations under the Agreement.

131. As a direct result of Symmetry's breach, Plaintiff has been damaged.

## Count Five

### Fraudulent Misrepresentation

132. Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

133. Goforth, acting in his individual capacity and as an agent of Symmetry, knowingly made false representations regarding Symmetry's compliance with the Agreement.

134. Goforth made these representations with the intent to deceive Plaintiff and conceal Symmetry's breach of the Agreement.

COMPLAINT- 19

135. Plaintiff relied on these misrepresentations to his detriment.

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(c)(3).

D. Because of Defendants' violations of the FTSA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to Fla. Stat. § 501.059.

E. Compensatory Damages

F. Punitive Damages

G. Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED on this February 1, 2025.

_____
Jason Crews

COMPLAINT- 20